United States District Court
Middle District of Louisiana

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

FILED
October 10, 2013

United States of America
v.
VINCENT SALZANO, a.k.a.
VINCENZO SALZANO, ARMANDO SALZANO,
and MOHAMMAD IMAN NEKOUIE

Defendant(s)

Case No. 13-MJ-89

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 8, 2013__ in the county of __East Baton Rouge Parish__ in the __Middle__ District of __Louisiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Possession with Intent to Distribute Cocaine |
| 21 USC 846 | Conspiracy |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

SA Richard Estopinal, Homeland Security
Printed name and title

Sworn to before me and signed in my presence.

Date: 10/10/2013

_____
Judge's signature

City and state: Baton Rouge, Louisiana

Honorable Stephen C. Riedlinger, Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, personally came and appeared Richard Estopinal, a Special Agent of the United States Department of Homeland Security – Homeland Security Investigations (HSI), who after being duly sworn, stated the following information to the best of his knowledge and belief:

1. I am a Special Agent with the United States Department of Homeland Security - Homeland Security Investigations ("HSI"), and have been so employed since the agency's inception in March 2003. Prior to March 2003, I served as a Special Agent with the Department of the Treasury - United States Customs Service ("USCS") from February 1987 through March 2003. I am authorized to conduct investigations into narcotics violations as codified under Title 21 of the United States Code.

2. The following information is based upon your Affiant's personal knowledge, as well as information and reports from agents and officers assisting your affiant in this investigation. It does not contain every fact known to me; rather, I have only included facts necessary for determining probable cause.

3. Based upon the below facts and circumstances, your Affiant has probable cause to believe, and does believe, that the defendants have violated Title 21 United States Code, Sections 841 and 846, among other statutes.

4. On October 8, 2013, at approximately 1530 hours, United States Customs and Border Protection – Air Operations notified HSI Special Agents that a private plane with a suspicious flight plan was en route to land at the Baton Rouge, Louisiana airport. The plane was arriving from the McAllen, Texas area, along the United States and Mexico border. HSI Special Agents and Customs and Border Protection (CPB) officers responded to the Baton Rouge airport to meet the plane.

5. By the time that HSI Special Agents and CPB officers arrived at the airport, the plane had just arrived at Executive Aviation. HSI Special Agents and CPB officers observed four individuals exit the plane. HSI Special Agents and CPB officers approached the four individuals and asked for identification. All four individuals provided identification. The four individuals were (a) Vincent SALZANO (a/k/a Vincenzo SALZANO), date of birth XX-XX-1958, SSN XXX-XX-4651, (b) Armando SALZANO (Vincent SALZANO's son), date of birth XX-XX-1981, SSN XXX-XX-5480, (c) Mohammad Iman NEKOUIE (Vincent SALZANO's son-in-law), date of birth XX-XX-1981, SSN XXX-XX-7029, and (d) Scott GENTRY, date of birth XX-XX-1990, SSN XXX-XX-4442. Vincent SALZANO was identified as the owner of the aircraft.

6. HSI Special Agents asked Vincent SALZANO for the flight plan. Vincent SALZANO stated that the plane had left Denver, Colorado and traveled to McAllen, Texas. According to Vincent SALZANO, after stopping in McAllen, they were en route to Atlanta, but stopped in Baton Rouge for fuel. HSI Special Agents explained to Vincent SALZANO their concerns regarding drugs being transported from the United States/Mexico border into the interior of the United States. Vincent SALZANO stated that he understood. HSI Special Agents requested consent to search the aircraft, and Vincent SALZANO agreed. When HSI Special Agents asked where the plane's luggage was stored, Vincent SALZANO walked to the nose of the aircraft and opened a door revealing several bags. A search of these bags was negative. HSI Special Agents asked Vincent SALZANO if there were any more bags on the plane, and Vincent SALZANO responded that there were not.

7. Vincent SALZANO indicated that he needed to use the bathroom. A CPB officer showed Vincent SALZANO and his son Armando where the bathroom was located inside Executive Aviation. Meanwhile, as HSI Special Agents and CPB officers walked around the outside of the aircraft. Through one of the plane's windows, a CPB officer observed a black gym bag on the floor of the plane, in the aisle of the passenger area of the plane. Vincent SALZANO was still in the bathroom. HSI Special Agents asked NEKOUIE for consent to look in the bag. NEKOUIE agreed, walked to the door of the plane, and opened the door. HSI Special Agents reached into the doorway and pulled the bag over to the door. HSI Special Agents then opened the bag and discovered numerous bundled objects, wrapped in tape ("kilo size bundles"), which appeared to agents to be packaged cocaine. HSI Special Agents performed a field test on the contents of one of the packages, which was positive for cocaine.

8. NEKOUIE and GENTRY, the pilot, were secured at this time. When Vincent SALZANO returned to the plane and saw HSI Special Agents by the door of the plane, he stated, "it's all mine," or words to that effect. Vincent SALZANO and Armando SALZANO were secured, and all four subjects were transported to the United States Transportation Security Administration Office, at the airport, so that they could be interviewed.

9. HSI Special Agents and Louisiana State Police narcotics detectives advised Vincent SALZANO of his *Miranda* rights. Vincent SALZANO acknowledged that he understood his rights and signed a written form confirming such. Vincent SALZANO stated that the cocaine was his and that no one else on the plane knew anything about it. SALZANO stated he picked up the drugs at the rear of a gas station near McAllen, Texas. According to SALZANO, Armando SALZANO was with him at the time, but Vincent SALZAZO claimed that Armando stayed at the front of the gas station. Vincent SALZANO told agents that he put the cocaine on the plane in Texas. Vincent SALZANO told agents that he used to live in Colorado but has lived in MEXICO for last six or seven years. He further told agents that the plane was his and that he had paid approximately $130,000 for it.

10. In a separate interview, HSI Special Agents and Louisiana State Police narcotics detectives advised Armando SALZANO of his *Miranda* rights. Armando SALZANO acknowledged that he understood his rights, signed a written advice form, and agreed to answer questions. Armando SALZANO stated that Vincent was his father. Armando SALZANO told agents that his father had purchased the aircraft approximately one month ago. According to Armando SALZANO, he and his father left Mexico on Monday, October 7, 2013, via commercial aircraft and flew to Atlanta, Georgia. According to Armando SALZANO, his father's private aircraft arrived in Atlanta from Denver that same day with two pilots (according to Armando), GENTRY and NEKOUIE. The next day, on October 8, 2013, the plane left Atlanta with all four individuals en route to Texas. On the way to Texas, the plane stopped and refueled in New Orleans, Louisiana, at the Lakefront airport. Armando SALZANO stated that they landed in Texas near the town of McAllen. After landing, according to Armando SALZANO, he and his father left the plane via a taxi and went to a nearby hotel. Vincent SALZANO was carrying two bags at the time. GENTRY and NEKOUIE stayed with the plane. According to Armando SALZANO, he stayed at the hotel for a "couple of hours," but his father left the hotel. Vincent SALZANO returned to the hotel a short time later with two bags. Armando SALZANO claimed that he did not know what was in Vincent SALZANO's bags. After Vincent SALZANO returned to the hotel, he and Armando SALZANO returned to the plane.

11. In a separate interview, HSI Special Agents and Louisiana State Police narcotics detectives advised NEKOUIE of his *Miranda* rights. NEKOUIE acknowledged that he understood his rights, signed a written advice form, and agreed to answer questions. NEKOUIE told agents that he works for Vincent SALZANO in the Denver area at a company that SALZANO owns called "Car Time LLC." NEKOUIE is also a pilot. According to NEKOUIE, he received a call from Vincent SALZANO on Monday, October 7, 2013, asking him to fly a plane for him. NEKOUIE told agents that he and GENTRY left Denver on October 7, 2013 and arrived in Atlanta late that night; NEKOUIE told agents that GENTRY is also a pilot and that GENTRY flew the plane for that portion of the trip to "get flight hours," or words to that effect. According to NEKOUIE, Vincent SALZANO picked NEKOUIE and GENTRY up at the airport and brought them to a motel. The next day, October 8, 2013, all four individuals left Atlanta and traveled to an airport near McAllen. NEKOUIE told agents that Vincent and Armando SALZANO left the plane in Texas and that Vincent was carrying a black gym bag at the time. NEKOUIE and GENTRY stayed with the plane. NEKOUIE told agents that when Vincent and Armando SALZANO returned to the plane, Vincent SALZANO was carrying the black bag he left with. Additionally, NEKOUIE told agents that this was his second trip with Vincent SALZANO. According to NEKOUIE, the first trip, which was approximately two weeks ago, was very similar to the second trip except that for the first trip he met Vincent and Armando SALZANO in Chicago, Illinois, not Atlanta. NEKOUIE told agents that Vincent SALZANO purchased the plane approximately two months ago but that the aircraft was in Armando SALZANO's name.

12. In a separate interview, HSI Special Agents and Louisiana State Police narcotics detectives advised GENTRY of his *Miranda* rights. GENTRY indicated that he understood his rights and signed a written form confirming such. GENTRY admitted that he had flown a plane for Vincent SALZANO on "four or five" previous occasions. According to GENTRY, the destination of the trips was always McAllen, Texas. According to GENTRY, the first trip took place approximately six weeks ago and was only with Vincent SALZANO. The second and third trips took place with both Vincent SALZANO and Armando SALZANO. The fourth trip involved Vincent SALZANO, Armando SALZANO, and NEKOUIE; during that trip, according to GENTRY, he and NEKOUIE dropped Vincent SALZANO and Armando SALZANO off in Corpus Christie, Texas, and then flew the plane to McAllen, where the SALZANOs met GENTRY and NEKOUIE and re-boarded the plane. For every trip, according to GENTRY, Vincent SALZANO would direct him to call a taxi prior to landing in Texas, so that a taxi would be waiting for Vincent SALZANO at the airport. According to GENTRY, Vincent and Armando SALZANO would then leave the plane via taxi and return a couple of hours later carrying bags. GENTRY told agents that he has seen Armando SALZANO carrying a bag on at least one prior occasion. GENTRY admitted that he was suspicious of Vincent and Armando SALZANO, but, according to GENTRY, Vincent SALZANO told him the purpose of the trips was to buy and sell cars. Vincent SALZANO would pay GENTRY $200/day, in cash, for piloting the plane during the trips.

13. While the interviews were being conducted, a Baton Rouge Police Department K-9 who has received training in narcotics detection alerted to an area in the rear of the passenger area of the plane, behind one of the passenger seats. A search of that area revealed a second gym bag containing packages similar to those found in the first bag. One of the packages from this second bag was also field-tested, and tested positive for cocaine.

14. A preliminary records check for Vincent SALZANO, conducted at the scene, indicated that he was arrested in 1992 by the United States Marshal's Service for distribution of cocaine. Agents asked Vincent SALZANO about the incident and he indicated that he had been convicted, telling agents that he served six months on house arrest with electronic monitoring.

15. Based on the above, I believe that probable cause exists to believe that Vincent SALZANO, Armando SALZANO, and Mohammad Iman NEKOUIE have violated Title 21, United States Code, Sections 841 and 846, in that they conspired to and did possess cocaine with the intent to distribute such cocaine. The undersigned respectfully requests that a Criminal Complaint and Warrants for Arrest be issued for the three individuals identified above.

_____
Richard Estopinal, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 10th day of October, 2013, at Baton Rouge, Louisiana.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE